IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JEFFREY HUCKABAY, | ) |
| Plaintiff, | ) |
| VS. | ) No. 11-cv-1335-JDT-egb |
| TENNESSEE DEPARTMENT OF CORRECTION, et al., | ) |
| Defendants. | ) |

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUBSTITUTION AND TRANSPORTATION

Plaintiff Jeffrey Huckabay, an inmate, filed a pro se complaint pursuant to 42 U.S.C. § 1983. The court dismissed various defendants and ordered service of process for Northwest Correctional Complex ("NWCX") Counselor Bonnie Foster, NWCX Job Coordinator Shelia Jones, Physician's Assistant Amanda Collins, Dr. Ojiugo Iko, Dr. Harold Butler,[1] Nurse Cathy Sampson, Nurse Megan Harris, and Nurse Bargery.[2]

Defendants Foster, Jones, Harris, and Collins have filed a motion for summary judgment [DE# 82], and Defendant Dr. Iko has filed a motion for summary judgment [DE# 85]. Plaintiff has filed a response to the motions [DE# 89] and a supplemental response [DE#

---

[1] On November 4, 2014, Defendants filed a suggestion of death as to Dr. Butler.

[2] Defendants Nurse Sampson and Nurse Bargery have been dismissed from the action.

95]. Defendants have filed a reply to the supplemental response [DE# 97].

For the reasons set forth below, the motions for summary judgment [DE#s 82, 85] are GRANTED. Plaintiff's motion for substitution and transportation [DE# 83] is DENIED as moot.

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Revised Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

    (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or

    (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

In Celotex Corp., the Supreme Court explained that Rule 56:

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23. In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"

Id. at 252; see also Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Plaintiff alleges that, on December 5, 2009, while confined at Hardeman County Correctional Facility ("HCCF"), he fell and injured his neck. He was transferred to NWCX on August 20, 2010. Plaintiff alleges that he informed NWCX officials that he required a bottom bunk due to a medical health classification from the HCCF Doctor. He was told to take the upper bunk or be written up and to see the NWCX doctor to remedy the problem. While climbing off the upper bunk, Plaintiff allegedly fell.

On September 8, 2010, Plaintiff was transferred to NWCX, Site II. Plaintiff alleges that he saw Dr. Iko who refused to move him from his top bunk assignment. Plaintiff alleges that he again fell from the bunk while climbing down on October 27, 2010. Plaintiff alleges that he sustained serious injuries, including a broken leg. Plaintiff was moved to a bottom bunk temporarily.

On November 12, 2010, Plaintiff was transferred to the Special Needs Facility where he was examined and received orders for a walking cast, a walking cane, medication, and surgery. Plaintiff alleges that he contracted a skin infection while at Special Needs. He was examined by Defendant Dr. Butler who allegedly prescribed no medication for the infection. Plaintiff allegedly developed sores from the walking cast that were treated twice daily at NWCX.

### Defendants Collins, Foster, Harris, and Jones

Defendants contend that they are entitled to summary judgment because they were not deliberately indifferent to Plaintiff's serious medical needs. Under Estelle v. Gamble, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eighth Amendment." "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Id. at 105.

An Eighth Amendment claim consists of objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson, 501 U.S. at 298; Brooks v. Celeste, 39 F.3d 125, 127-28 (6th Cir. 1994); Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992). The objective component requires that the deprivation be "sufficiently serious." Farmer, 511 U.S. at 834; Hudson, 503 U.S. at 8; Wilson, 501 U.S. at 298. The subjective component requires that the official act with the

requisite intent, that is, that he have a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 297, 302-03. The official's intent must rise at least to the level of deliberate indifference. Farmer, 511 U.S. at 834; Wilson, 501 U.S. at 303.

In the present case, Plaintiff contends that these defendants knew of and disregarded an excessive risk to his health and acted with a deliberateness tantamount to an intent to punish, see Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988); Hicks v. Frey, 992 F.2d 1450, 1455 (6th Cir. 1993), by allegedly ignoring his health classification when they made him use a top bunk bed and assigned him to the position of kitchen helper.

To refute Plaintiff's claims, Defendants have presented the following evidence in their statement of undisputed facts [DE# 82-2].

On May 10, 2007, Plaintiff had a physical examination by Dr. Stipanuek at HCCF and was assigned a health classification of Class A – Full Duty. Affidavit of Amanda Collins at §3. He received a health classification of Class A – Full Duty after a physical examination by HCCF Nurse Practitioner Conner on April 9, 2010. Id. No activity restrictions were assigned to Plaintiff as a result of these physical examinations. Id. Plaintiff's medical chart did not show any reason that his health classification should have been changed from the date of the most recent physical examination through August 2010 when he was transferred to NWCX. Id. Plaintiff received a Limited Activity Notice with activity restrictions after the reported fall from his bunk at NWCX on October 27, 2010. Affidavit of Amanda Collins at §12.

The affidavit of Defendant Collins, a physician's assistant, states that she did not

refuse Plaintiff any medically necessary treatment at any time, and her review of the medical chart shows that no other health care providers at NWCX refused Plaintiff any medically necessary treatment. Id. at §12. The affidavit also states that at no time did Defendant Collins refuse to change Plaintiff's health classification. Id.

The affidavit of Defendant Harris, a licensed practical nurse, states that she did not refuse Plaintiff any medically necessary treatment or medication at any time. Affidavit of Megan Harris at §7.

Defendant Jones was NWCX-Site 1 Jobs Coordinator, and her job responsibilities included making inmate job assignments at NWCX-Site 1. Affidavit of Sheila Jones at §1. On August 25, 2010, after Plaintiff was transferred to NWCX-Site-1, he was assigned to the position of kitchen helper. Id. at §4. This assignment was consistent with his Class A – Full Duty health classification. Id. Duties of a kitchen helper include mopping floors, washing dishes and other cleaning duties. Id. Defendant Jones did not assign Plaintiff to a job position that violated his health classification. Id. at §5. Plaintiff had no medically assigned activity restrictions on August 25, 2010. Id.

In response, Plaintiff has submitted his own medical records "with highlighted notes." [DE# 95 at p. 2]. He claims that he was moved to a bottom bunk by the HCCF physician on March 11, 2010, because of his neck and shoulder injury from his first fall. He also notes that he was moved to a bottom bunk after his October 27, 2010, fall at NWCX. He acknowledges that his neck and shoulder injuries were treated while he was at HCCF and at NWCX. [DE# 95 at p. 4].

7

It is undisputed that Plaintiff was transferred to NWCX on August 20, 2010, and between that date and August 30, 2011, Plaintiff had a Class A – Full Duty health classification. His health classification was not changed until August 30, 2011, although he received a Limited Activity Notice with activity restrictions after his October 27, 2010, fall. [DE# 95 at p. 3]. The court finds, as a matter of law, that Defendants were entitled to rely on that classification.

As explained in Espey v. Spectrum Health System, Inc., 2011 WL 2516638 (M.D. Tenn.),

> In Silas v. McGinnis, 2001 WL 1450717, at *1 (6th Cir. Oct.31, 2001), a pro se prisoner sued multiple prison officials contending that they were deliberately indifferent to his back condition when they assigned him to work in the prison's food services area despite a 1994 MRI showing some degenerative changes in his lower back. The Silas court determined, however, that the prisoner's treating physician never placed any lifting restrictions on him and, as such, prison officials "had no objective medical evidence that he could not work in the food services area." Id. Moreover, there could be no deliberate indifference because the prisoner was sent for an examination by medical personnel as soon as he began complaining about his inability to work due to his back pain. Id. Similarly, in Harris v. Westbrooks, 2007 WL 1047594, at *1 (M.D. Tenn. Apr.4, 2007), the pro se prisoner plaintiff, a participant in the TVDP program, had a medical status listed as "Medical Evaluation: Class B Medical, Medications/Restrictions: Three medications for Hypertension/Lifting 100 lbs maximum-medium work only ..." Id. The prisoner then sued multiple prison officials, including Defendant Daniel, alleging that Defendant Daniel had assigned him to the community service work detail despite her awareness of his medical status. Id. The court dismissed the claim against Defendant Daniel because she "assigned the plaintiff to the community services work detail based on his medical status as it was known to her." Id. at *3; see also Knight v. Wiseman, 590 F.3d 458, 465 (7th Cir.2009) (prison officials were entitled to rely on the absence of work restrictions on prisoner's record and conclude that he could work without endangering his health).

<s>8</s>

2011 WL 2516638 at *14.

In the present case, as in Espey, Silas, Harris, and Knight, Defendant prison officials were entitled to rely on the absence of restrictions in Plaintiff's record and could conclude that he did not have to be assigned a bottom bunk and could work as a kitchen helper without endangering his health. Therefore, they were not deliberately indifferent to his serious medical needs and are entitled to summary judgment.

## Defendants Iko and Butler

In his own motion for summary judgment, Defendant Dr. Iko relies on the affidavits, medical records, and arguments submitted by his co-defendants, as discussed above, which show that Plaintiff did, in fact, receive treatment for his alleged neck and shoulder injuries.

A prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976). The Court clarified the meaning of deliberate indifference in Farmer v. Brennan as the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. Id. 511 U.S. at 835-36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106.

Here, the record shows that Plaintiff received adequate medical care. The complaint itself states that Plaintiff was "examined" by Defendants. Defendants are correct that Plaintiff needs to establish more than a simple medical malpractice claim. See Comstock v.

McCrary, 273 F.3d 693, 703 (6th Cir.2001) ("The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims."). In disputes "over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." Westlake, 537 F.2d 857 at 860 n. 5. But at the same time, "[a] government doctor has a duty to do more than simply provide some treatment to a prisoner who has serious medical needs." See LeMarbe v. Wisneski, 266 F.3d 429, 439 (6th Cir. 2001) ("Similarly, the fact that Dr. Wisneski eventually referred LeMarbe to a specialist does not automatically immunize Dr. Wisneski from liability for LeMarbe's intervening injuries. For, as many federal courts have recognized, a deliberately indifferent delay in giving or obtaining treatment may also amount to a violation under the Eighth Amendment.").

In the present case, Plaintiff has not shown that Defendants had a "sufficiently culpable state of mind" so as to satisfy the subjective component of his Eighth Amendment claim based on his allegations that Defendant Dr. Iko refused to move him to a bottom bunk, despite his previous injuries and fear of falling, Defendant's "examination" of him consisted of looking at his knee from across the room, and Defendant failed to follow the orders of the specialist, Dr. Sharon Albers. See Plaintiff's response [DE# 61]. Therefore, Dr. Iko is entitled to summary judgment.

As for Defendant Dr. Butler, defense counsel filed a "Suggestion of Death of Defendant Harold Butler" on November 4, 2014. On November 28, 2014, Plaintiff moved for Defendant's estate and/or employer to be substituted as the defendant pursuant to Rule

10

25 of the Federal Rules of Civil Procedure [DE# 83].

Federal Rule of Civil Procedure 25(a) provides in relevant part:

(1) Substitution if the Claim Is Not Extinguished If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.
...
(3) Service. A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

In the present case, Plaintiff has not named the "proper party" for substitution in his motion. Instead, Plaintiff asks that Defendant Dr. Butler's estate, employer, and insurance company be substituted for Dr. Butler. There is nothing in the record showing that Plaintiff served his motion on these nonparties as required by Fed. R. Civ. P. 25(a)(3) or even the identity of these nonparties.

However, the motion for substitution is moot, because the undisputed facts, as evidenced by Plaintiff's medical record, show that Defendant Dr. Butler did, in fact, treat Plaintiff's various conditions and/or refer Plaintiff to other providers for treatment. See, e.g., DE#96-1 at pp. 13, 47, 71, 147, 152-158, DE# 96-2 at pp. 19-22, 64-67, 93, DE# 96-3 at pp. 49, 53, 57, 65, 73, 83, 89, 99, 103, 105, 107, 115, 121, 123, 125.[4]

---

[4] Plaintiff has submitted 550 pages of medical records with "highlighted notes on the top 54 pages" but has pointed to no specific records that dispute Defendants claims that he received adequate medical care. "The Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claim." Abdulsalaam v. Franklin County Bd. of Com'rs, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 379 (6th Cir.2007)).

The deliberate indifference standard is not met by complaints setting forth primarily a difference of opinion about the course of treatment afforded an inmate. See Pohlman v. Stokes, 687 F. Supp. 1179, 1182 (S.D. Ohio 1987); Estelle, 429 U.S. at 107. Plaintiff's medical records show that he has received more than adequate medical care and treatment on numerous occasions from all of the defendants, including Defendant Dr. Butler.

## Summary and Conclusion

Because Defendants have refuted Plaintiff's claim that they were deliberately indifferent to his serious medical needs and Plaintiff has pointed to no countervailing evidence that creates a disputed issue of material fact, the court finds that Defendants are entitled to judgment as a matter of law, and the motions for summary judgment [DE#s 82, 85] are GRANTED. Plaintiff's motion for substitution and transportation [DE# 83] is DENIED as moot.

The clerk is DIRECTED to enter judgment accordingly.

IT IS SO ORDERED.

      s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE